

# INDEX



| SUBJECT | PAGE |
|---|---|
| Arbitration | 14-18 |
| Attendance Bonus | 104-105 |
| Auditing | 10,106 |
| Benefit Funds | 10,13-14,23-30,89,101,106-109 |
| Building Work | 6-7 |
| Bulletin Board | 91 |
| Call-in Pay | 48 |
| Check-off | 11-12 |
| Classification of Buildings | 30-31 |
| Common Disaster | 110 |
| Complete Agreement | 112 |
| Consolidated of Jobs | 106-109 |
| Contract Violators | 109 |
| Cost of Living Increase | 45-46 |
| Coverage of Agreement | 1-7 |
| Cuspidors | 110 |
| Damage or Breakage | 95 |
| Day of Rest | 49-50,89 |
| Days Off | 49-50 |
| Death in Family | 99 |
| Death of Employee | 101 |
| Differentials | 59-61 |
| Disability Benefits | 23-24,26,102-104,114 |
| Discharge | 10-11,50-51,75,86-87,98-99, 111-112 |
| Discrimination | 95-96 |
| Education and Training Fund | 10,13-14,27-30,89,101,106-108 |

# INDEX

| SUBJECT | PAGE |
| --- | --- |
| Election Day | 66 |
| Elevator Conversion | 92-93 |
| Elevator Starter | 47,97 |
| Employee Identification | 100 |
| Employees' Property (Loss) | 90 |
| Employees' Rooms | 97 |
| Employment Agency Fee | 96-97 |
| Engineers | 60 |
| Experienced Employee | 74-76,88 |
| Eyeglasses | 91 |
| Family and Medical Leave Act | 84,104-105 |
| Fines | 94-95 |
| Fire Safety Director | 111 |
| First Aid Kit | 90 |
| Firemen | 85 |
| Flexibility | 56 |
| Foreperson | 32-45,49,97 |
| Garnishments | 98-99 |
| General Provisions (Subsidiaries & Affiliates) | 109-110 |
| Government Decrees | 101-102 |
| Grievance Procedure | 12-14 |
| Guards | 3,32-45,55-56,60,74,98 |
| Handyperson | 32-45,97 |
| Health Fund | 10,13-14,23-25,28-30,83-84,89,101,106-109 |
| Higher Rate of Pay | 50-51 |
| Hiring Hall | 96-97 |
| Holidays | 61-66,85 |
| Hours and Overtime | 47-50,55-58 |

# INDEX

| SUBJECT | PAGE |
| --- | --- |
| Job Definitions | 97-98 |
| Jury Duty | 99-100 |
| Layoff | 71-73 |
| Leave of Absence | 58-59,77-84 |
| Legal Assistance (with Violations) | 94-95 |
| Legal Services Fund | 10,13-14,28-30,89,101,106-109 |
| Licenses | 94-95 |
| Lie Detector | 110 |
| Locker | 91 |
| Lockout | 18-20 |
| Luncheon Period | 47-49 |
| Management Rights | 50-59 |
| Meal Allowance | 49 |
| Medical Leave | 58-59,77-84 |
| Method of Payment of Wages | 70-71 |
| Military Service | 95 |
| Multi-Employer Bargaining | 21-23 |
| Mutual Obligations | 1-7 |
| New Hire Rate | 74-76 |
| Night Work | 47-48 |
| Others | 98 |
| Overtime | 47-50,66-68,70,86 |
| Part-time Employees | 70,85,98,105 |
| Past Better Conditions | 59-61 |
| Pension Fund | 10,13-14,25-30,76,82-83,89,101,106-109,114 |
| Permits | 94-95 |
| Personal Day | 62-66 |
| Picketing | 18-20 |

# INDEX

| SUBJECT | PAGE |
|---|---|
| Political Contributions | 11-12 |
| Pregnancy Leave | 84 |
| Premium Pay | 47,65-66,86 |
| Promotion | 73-77 |
| Pyramiding | 61 |
| Recall | 76-77 |
| Reducing Force | 51-55,115 |
| Relief Employees | 70 |
| Relief periods | 47-48,70 |
| Replacements | 73-76,89 |
| Resignation | 87 |
| Rest Room | 91 |
| Route Work | 5-7,43-45,48,55,62-63 |
| Sale or Transfer of Building | 94 |
| Sanitary Arrangements | 91 |
| Saving Clause | 112 |
| Schedules | 68-70 |
| Security Background Checks | 111-112,118 |
| Seniority | 50-56,64,66,73-74,76-79,86-88 |
| Seniority and Vacation in Relation to Sickness and Accident Absence | 77-84 |
| Service Center Visit | 100-101 |
| Sick Days | 56-58,77-79,104-106 |
| Snow Removal | 111 |
| Social Security "no match" letter | 118 |
| Sole Occupant Buildings | 6,59 |
| Strikes | 3,18-20 |
| Subcontracting | 111 |
| Successor Employer | 21-22 |

# INDEX

| SUBJECT | PAGE |
|---|---|
| Supplemental Retirement & Savings Fund | 10,13-14,28-30,76,89,101,106-109 |
| Term of Agreement | 20-21 |
| Termination Pay | 91-94 |
| Tools | 94-95 |
| Training Programs (License/Permit) | 98 |
| Trial Period | 74 |
| Unemployment Insurance | 83-84,102-103 |
| Uniforms | 90 |
| Union Insignia | 91 |
| Union Security | 7-10 |
| Union Visitation | 99 |
| Vacancies | 46,73-76,88 |
| Vacation Replacements | 89 |
| Vacations, Vacation Pay | 77-89 |
| Voting Time | 66 |
| Wages | 32-46,74-75 |
| Wage Differentials | 59-61 |
| Wage Rates | 32-45 |
| Weather Conditions | 102 |
| Work Clothes | 90,111 |
| Work of Absentees | 57-58,66-68 |
| Work Schedules | 68,70 |
| Workload | 56,68-70 |
| Workers' Compensation | 23-24,26,58-59,77-79 83,102-106 |

THE REALTY ADVISORY BOARD ON LABOR RELATIONS, INC. ("RAB"), an incorporated multi-employer association, duly authorized and empowered to enter into this agreement for its contractor members which appear on the Master List furnished to SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ, AFL-CIO ("Union"), and the Union, on behalf of its members and other building service employees to whom this agreement applies and for whom it is the collective bargaining agent, do hereby agree as of this 1st day of October 2004 as follows:.

# ARTICLE I
## Mutual Obligations

1. The Employer obligates itself that it will in good faith comply with all of the provisions of this Agreement. The Union obligates itself and its members that they will in good faith comply with all of the provisions of this Agreement and that the workers will perform their work conscientiously, faithfully and efficiently under the terms of this Agreement.

The Union recognizes that the RAB, because of its size and the nature of its membership in the building service industry within the geographic jurisdiction of the Union, is the principal bargaining representative for employers working in the industry with whom the Union

negotiates collective bargaining agreements, and any extensions or renewals thereof.

Work performed pursuant to the terms of this collective bargaining agreement shall not be performed by persons not covered by the bargaining agreement except as provided in Article II.

2. This Agreement shall apply to all service employees employed in any facility, including residential buildings, in the City of New York, Nassau, Suffolk, Westchester, Putnam, Dutchess, Rockland, Orange and Sullivan counties, New Jersey (north of Route 195), Connecticut, and in such other areas that may come within the geographical jurisdiction of the Union. All terms and conditions of this Agreement as it applies to building employees shall apply except that wages of employees employed in Queens, Brooklyn, Bronx and Staten Island and wages of those employed at hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses and bowling alleys in Manhattan, Queens, Brooklyn, Bronx and Staten Island shall be negotiated separately, except that if an Employer fails to give the Union written notification of its intent to negotiate a wage rate pursuant to this Agreement within ninety (90) days of commencement of the job, the Employer shall be required to pay Class A Office Building rates provided for in Article XI of this Agreement.

If an Employer fails to negotiate within ninety (90) days and loses the job within that ninety (90) days, it shall be required to pay Class A Office Building rates provided for in Article XI of this Agreement.

In the event the Union and the Employer are unable to reach an agreement on wages, the Union shall have the right to strike and the Employer shall have the right to lockout.

All security employees shall be covered by this Agreement unless the Union and the Employer execute a separate collective bargaining agreement covering security guards.

The Employer shall be bound by each of the following agreements in the event the Employer performs work within the geographical areas subject to those agreements:

a) The 2005 Independent Contractors Agreement covering Long Island.

b) The 2005 Independent Exterminators Agreement.

c) The 2005 Independent Contractors Agreement covering New Jersey.

d) The 2005 Hudson Valley Contractors Agreement.

e) The 2005 Hartford County and Fairfield County Connecticut Agreements.

3. The Employer taking over jobs in Queens, Brooklyn, Bronx and Staten Island, or at hospitals, department stores, schools, charitable, educational and religious institutions in Manhattan, Queens, Brooklyn, Bronx and Staten Island, shall assume and be bound by the remaining term of any existing wage agreements between the Union and the predecessor Employer.

4. In the event that the Employer presently services or takes a job at a residential building, the terms of the Apartment Building Agreement existing at such location shall apply. In the event that no collective bargaining agreement between the Union and the Employer covering such location exists, then, in the event that such job(s) are located in Manhattan, Queens, Brooklyn or Staten Island, the terms of the standard Independent Apartment Building Agreement shall apply.

5. In the event that an Employer presently services or takes over a job at a facility within the geographical areas set forth in any of the Agreements listed in Section 2(a) through (e) hereof, it shall apply the terms of the relevant agreement.

6. In the event that an Employer presently services or takes over a job in Queens, Brooklyn, Bronx and Staten Island, or at hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses, bowling alleys, transit terminals or residential buildings in Manhattan, Queens, Brooklyn, Bronx and Staten Island, and demonstrates to the Union that a hardship exists with respect to the application of certain provisions of this Agreement or the Independent Apartment Building Agreement in residential buildings, the Union may, within its sole discretion, consent to negotiate with respect to such provisions of the Agreement.

7. (A) "Route Work" is all work performed by the Employer other than in buildings where the Employer contracts directly with the building owner and/or agent. An employee will receive the Route rate for any Route Work unless:

1) The Route Work was contracted for after April 1, 1981, or the Route Work is awarded to a replacement contractor after April 1, 1981 and a contractor that is party to a collective bargaining agreement with the Union is performing services directly for the building owner and/or agent.

2) The Route Work was contracted for after April 1, 1981, or the Route Work is awarded to a replacement contractor after April 1, 1981, and the employees are

maintaining tenant space in the building pursuant to a collective bargaining agreement directly with the building owner and/or agent.

3) The employees were formerly covered by a Local 32B collective bargaining agreement.

If any of the above conditions are met the employees shall receive the Building rate.

(B) "Building Work" is all work performed by the Employer where the Employer contracts directly with the building owner and/or agent. All employees performing Building Work shall receive the Building rate unless they are employed in a sole occupant building having less than 130,000 square feet that has been operated as a Route job prior to May 1, 1962. Employees in such "sole occupant" buildings will continue to receive the Route rate until the Route Work is awarded to a replacement contractor or the building ceases to be a "sole occupant" building.

(C) For the purpose of the Seniority and Layoff provision set forth in Article XIV, Section 11, and the Holiday provision set forth in Article XIV, Section 3, an employee shall be considered a Route employee if the employee is engaged in Route Work. An employee shall be considered a Building employee if the employee is engaged in Building Work. The type of

work performed, not the rate of pay, shall determine whether the employee is a Route or Building employee.

## ARTICLE II
## Union Responsibility and Union Security

1. The Union is recognized as the exclusive collective bargaining representative of all classifications of service employees as defined in Article I, Section 2, above.

2. There shall be a Union Shop throughout the term of this Agreement.

The "Union Shop" requires membership in the Union by every employee as a condition of employment after the thirtieth (30th) day following employment or the execution date of this Agreement, whichever is later, and requires that the Union shall not ask or require the Employer to discharge or otherwise discriminate against any employee except in compliance with the law.

In the event the Union security provision of this Agreement is held to be invalid, unenforceable or of no legal effect generally or with respect to any Employer because of interpretation or a change in federal or state statute, city ordinance or rule or decision of any government administrative body, agency or subdivi-

sion, the permissible Union security clause under such statute, decision or regulation shall be enforceable as a substitute for the Union security clause provided for herein.

3. Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting an employee's discharge because he has not met the requirements of this Article, unless the Employer questions the propriety of so doing, the employee shall be discharged within fifteen (15) day of said notice if prior thereto he does not take proper steps to meet said requirement. If the Employer questions the propriety of the discharge, he shall immediately submit the matter to the Arbitrator. If the Arbitrator determines that the employee has not complied with Section 2, he shall be discharged within ten (10) days after written notice of the determination has been given to the Employer.

4. The Employer shall be responsible for all revenue lost by the Union by reason of any failure to discharge an employee who is not a member of the Union, if the Union has so requested in writing. In cases involving removal of employees for non-payment of dues, the Arbitrator shall have the authority to assess liquidated damages.

5. The Employer shall on execution of this Agreement submit to the Union a list of all locations in the City of New York, Nassau, Suffolk, Westchester, Putnam, Dutchess, Orange and Sullivan counties, New Jersey (north of Route 195) and Connecticut, presently being serviced by the Employer. Such list shall include the names and Social Security numbers and home addresses of the employees performing the work plus the hours of employment and the present wage rate and Union affiliation. The Employer shall immediately notify the Union in writing of the name, Social Security number and home address of each new employee engaged by the Employer. The Employer shall immediately notify the Union in writing on forms to be supplied by the Union as soon as a cancellation of an account becomes effective where Union members are employed. The Employer shall immediately notify the Union when he acquires a new job.

When an Employer loses a route job where the employees are represented by the Union, the Employer shall not only notify the Union, but shall have an additional obligation to notify the employees on such job that another Employer will be taking over that job and that he or she should continue to report to the job as previously scheduled. Any failure to so notify shall make the Employer responsible for any loss of wages.

The Employer shall be liable for any lost wages and/or damages sustained by employees as a result of the Employer's willful failure to com-

ply with the job cancellation notice and/or new job notification provisions of this Agreement.

6. For the purpose of determining the employees employed by the Employer who should be members of the Union under the terms of this Agreement, the Union shall have the right to inspect all the Employer's records and books including, but not limited to, the Employer's Social Security reports, all payroll reports, and any other record of employment (except the salaries of non-union supervisors). The Employer shall make such records available to the Union upon request thereof. The Union shall have the right to expedited arbitration in the event an Employer fails to comply with this right of inspection. The Health, Pension, Training, Legal and/or Supplemental, Retirement and Savings Funds (SRSF) shall have the same right to inspect as the Union.

## ARTICLE III
### Discharge

Employees shall not be discharged by the Employer except for justifiable cause. If an employee is unjustly discharged, he shall be reinstated to his former position without loss of seniority or rank and without salary reduction. The Arbitrator may determine whether, and to what extent, the employee shall be compensated by the Employer for time lost.

Any employee who is discharged shall be furnished a written statement of reasons for such discharge not later than five (5) working days after the date of discharge.

## ARTICLE IV
### Checkoff

The Union does hereby authorize the Employer and the Employer does hereby agree to deduct monthly dues, initiation fees, American Dream Fund or Political Action Fund contributions, any assessments, fines or other fees due to the Union from each employee covered by this Agreement from the wages due to each and every employee during the term of this Agreement. The Employer agrees that such deductions shall constitute Trust Funds that will be forwarded by the Employer to the Union not later than the twentieth (20th) day of each and every month. It is understood and agreed that the Employer will make such deductions and authorizations will be signed by the employee affected, all in accordance with the pertinent provisions of existing law. The Union will furnish to the Employer the necessary authorization forms.

If the Employer fails to remit to the Union the dues or other monies deducted in accordance with this section by the twentieth (20th) day, the Employer shall pay interest on such dues or other monies at the rate of one percent per month beginning on the twenty-first (21st) day, unless

the Employer can demonstrate the delay was for good cause due to circumstances beyond its control. The interest shall not be assessed for an Employer's initial failure to deduct voluntary political contributions until thirty (30) days after the Employer has received written notice from the Union of its failure to deduct.

If a signatory does not revoke his dues authorization at the end of the year following the date of authorization, or at the end of the current contract, whichever is earlier, it shall be deemed a renewal of authorization, irrevocable for another year, or until the expiration of the next succeeding contract, whichever is earlier.

## ARTICLE V
## Grievance Procedure

1. The parties shall provide for a grievance procedure to perform the following functions:

(a) To endeavor to adjust all issues not covered by and not inconsistent with any provision of this Agreement and which the parties are not required to arbitrate under terms of this Agreement.

(b) To endeavor to adjust without arbitration any issue between the parties which under this Agreement the parties are obligated to submit to the Arbitrator. The cost of administering Step II Grievance Meetings, including the retention of a

mediator to facilitate resolution of grievances, shall be borne equally by the RAB and the Union.

2.(a) The grievance may first be taken up directly with a representative of the Employer and a representative of the Union.

(b) If the grievance is not resolved it may be presented for resolution at a Step II Grievance Meeting. Counsel for the Union and the Employer may be present at any grievance procedure meeting.

(c) If a grievance is not resolved through the steps of the grievance procedure it may be submitted to the Arbitrator, who shall be authorized to take jurisdiction upon the request of either party if there shall be unreasonable delay in the processing of the grievance.

(d) Any grievance, except as otherwise provided herein and except a grievance involving basic wage violations, including Pension, Health, Training, Legal and/or SRSF contributions as set forth in Article X, shall be presented to the Employer in writing 120 days of its occurrence, except for grievances involving suspension without pay or discharge, which shall be presented

within forty-five (45) days, unless the Employer agrees to an extension, or the Arbitrator finds one should be granted for good cause shown.

## ARTICLE VI
## Arbitration

1. There shall at all times be a Contract Arbitrator to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate before him under the terms of this Agreement.

2. The fee of the Contract Arbitrator and all reasonable expenses involved in his functions shall be borne fifty percent (50%) by the Employer and fifty percent (50%) by the Union, except that in the event the Employer is in violation of any obligation under the provisions relating to the Health, Pension, Training, Legal and/or SRSF Funds, wages, dues and initiation fees, or any other violations involving damages, then the Employer shall pay the full fee of the Contract Arbitrator and all expenses in connection with the arbitration of the dispute, including, but not limited to, counsel fees, auditor's fees, arbitration costs and fees and court costs, plus a minimum of fifteen percent (15%) per annum on all monies awarded by the Contract Arbitrator.

14

3. The Arbitrator shall initially schedule a hearing after either party has served written notice upon the other that the grievance procedure has not resulted in an adjustment. The oath-taking and the period and the requirements for service of notice in the form prescribed by statute are hereby waived. The Arbitrator's award shall be made within thirty (30) days after the hearing closes. If the Arbitrator shall fail to render his written award within said thirty-day period, either party may serve a written demand upon him that the award must be made within ten (10) days after said demand. The decision shall be rendered within such additional ten (10) day period unless the parties consent to an extension in writing or an illness of the Arbitrator delays such decision. By mutual consent, the time of both the hearing and decision may be extended in a particular case. In the event of a willful default by either party in appearing before the Arbitrator, after due written notice shall have been given to him, the Arbitrator is authorized to render his award upon the testimony of the adversary party.

Due written notice means mailing, faxing, telegraphing or hand delivery to the address of the employer furnished to the Union by the RAB.

4. The procedure herein outlined in respect to matters over which the Contract Arbitrator has jurisdiction shall be the sole and exclusive

15

method for the determination of all such issues, and said Arbitrator shall have the power to grant any remedy required to correct a violation of this Agreement, including, but not limited to, damages and mandatory orders, and said Arbitrator shall have the further power in cases of willful violations (violations reflective of a deliberate intent to violate this Agreement) to award appropriate remedies, including, but not limited to, damages, all costs and expenses incurred by the Union in the processing of the grievance and arbitration proceedings, and to issue mandatory orders, the award of the Arbitrator being final and binding upon the parties and the employee(s) involved; provided, however, that nothing herein shall be construed to forbid either of the parties from resorting to court for relief from, or to enforce rights under, any arbitration award.

5. In any proceeding to confirm an award, service may be made by registered or certified mail within or without the State of New York as the case may be.

6. Should either party fail to abide by an arbitration award within two (2) weeks after such award is sent by registered or certified mail to the parties, either party may, in its sole and absolute discretion, take any action necessary to secure such award, including, but not limited to, suits at law. Should either party

16

bring such suit, it shall be entitled, if it succeeds, to receive from the other party all expenses for counsel fees and court costs.

7. Grievants attending grievances and arbitrations during their regularly scheduled hours shall be paid during such attendance. If a grievant requires any employee of the building to be a witness at the hearing and the Employer adjourns the hearing, the employee witness shall be paid by the Employer for his regularly scheduled hours during attendance at such hearing. This provision shall be limited to one employee witness.

No more than one adjournment per party shall be granted by the Arbitrator without the consent of the opposing party.

All Union claims are brought by the Union alone, and no individual shall have the right to compromise or settle any claim without the written permission of the Union.

In the event that the Union appears at an arbitration without the grievant, the Arbitrator shall conduct the hearing provided it is not adjourned. The Arbitrator shall decide the case based upon the evidence adduced at the hearing.

There is presently an Office of the Contract Arbitrator-Building Service Industry as contract arbitrator for all disputes. It is agreed by the parties hereto that the arbitrators serving

17

such office shall also serve as contract arbitrators under this Agreement. The arbitrators currently are:

John Anner, Stuart Bauchner, Noel Berman, Nicholas Cooney, John Dorsey, Howard Edelman, Robert Herzog, Theodore Lang, Marilyn Levine, Randi Lowitt, Earl Pfeffer and Bernard Young.

Upon thirty (30) days written notice to each other, either the Union or the RAB may terminate the services of any Arbitrator on the panel. Successor or additional Arbitrators shall be appointed by mutual agreement of the Union and the RAB. In the event of the removal, death or resignation of all of the Arbitrators, the successors or temporary substitute shall be chosen by the Union and the RAB. If the parties are unable to agree on a successor, then the Chairman of the New York State Employment Relations Board shall appoint a successor after consultation with the parties.

The cost of the Office of the Contract Arbitrator shall be shared equally in a manner determined by the Union and the RAB.

## ARTICLE VII
### Strikes, Stoppages, Lockouts

1. There shall be no work stoppage, strike, lockout or picketing, except as provided in Article I, Section 2, and Sections 2, 3 and 7 of this Article. If this provision is violated, the matter may be submitted immediately to the Arbitrator.

2. If an Arbitrator's award or a judgment against any Employer is not complied with within three (3) weeks after such award, or notice if such judgment is given pursuant to law, is sent by registered or certified mail to the Employer, at his last known address, the Union may order a stoppage of work, strike or picketing to enforce such award or judgment and it may also compel payment of lost wages to any employee for the period he engaged in such activity. Upon compliance with the award or judgment and payment of lost wages, such activity shall cease.

3. The Union may order a work stoppage, strike or picketing where work previously performed by members of the bargaining unit is being performed by persons outside of the bargaining unit, provided that seventy-two (72) hours' written or telegraphic notice is given to the Employer and the RAB of the Union's intention to do so.

4. The Union shall not be held liable for any violation of this Article where it appears that it has taken all reasonable steps to avoid and end the violation.

5. No employee covered by this Agreement shall be required by the Employer to pass a lawful picket line established by any local of the Service Employees International Union in an authorized strike, including a lawful picket line established by Local 32BJ pursuant to an authorized strike at another job location.

6. The Employer will not do the work of the striking employees if the Union is conducting an authorized strike.

7. The Employer shall provide staffing information to the Union upon its request for any job which it currently services within four (4) business days of the request. In the event that such information is not provided, the Union shall have the right to engage in a work stoppage until such information is supplied. During the period of work stoppage, the employees shall continue to receive their regular wages and benefits.

## ARTICLE VIII
### Duration

This Agreement shall be effective from October 1, 2004, to December 31, 2007.

With regard to guards, this Agreement shall continue in effect until February 29, 2008, but all economic terms in the successor Agreement to this contract shall be retroactive to January 1, 2008.

Upon the expiration date of this Agreement as set forth above, this Agreement shall thereafter continue in full force and effect for an extended period until a successor Agreement shall have been executed. During the extended period, all terms and conditions hereof shall be in effect subject to the provisions of this paragraph. During the extended period, the RAB and the Union shall negotiate for a successor Agreement retroactive to the expiration date, and all benefits and improvements in such successor Agreement shall be retroactive, if such Agreement shall so provide. In the event the parties are unable to agree upon terms of a successor Agreement, either party, upon three (3) days' written notice to the other party, may cancel this Agreement.

## ARTICLE IX
### Multi-Employer Bargaining

1. Employers on the Master List submitted by the RAB to the Union at the commencement of the negotiations shall be bound by the terms of this Agreement.

2. If there is a *bona fide* sale of any member Employer or if there is a sale of customers or jobs, the successors to such business may, unless they have otherwise indicated their intention not to be bound by this Agreement, join the RAB and adopt this Agreement within forty-five

(45) days after such acquisition, provided the successor employer is not already bound by another agreement with the Union. In the event the successor employer is signatory to an agreement with the Union other than this Agreement, the employer shall remain bound to the terms of that agreement until its expiration date. If such employer joins the RAB it may adopt this Agreement and be fully covered by its terms after expiration of its other agreement and before execution of a new contract provided:

(a) notice in writing is given to the Union of such adoption prior to the expiration of the other contract;

(b) such employer is not in default under the other contract, and

(c) the RAB approves such membership.

3. Employers who are newly organized by the Union shall have forty-five (45) days to file a commitment to this Agreement after the Union serves a representation notice on the Employer with a showing of majority status of the existing employees, with a copy to the RAB.

4. Where the time limits provided for in this Article are not complied with, this Agreement shall not be applicable to such Employer unless the Union agrees to such commitment in writing.

5. Upon request of the President of the RAB,

22

the Union shall provide copies of any agreements outside of Brooklyn, Manhattan, Staten Island or Queens that are more favorable to the Employer than the terms of this Agreement.

## ARTICLE X
## Health, Pension, Training, Legal and Supplemental Retirement & Savings Funds

### A. HEALTH FUND

1. The Employer agrees to make payment into a health trust fund, known as the "Building Service 32BJ Health Fund," to cover employees covered by this Agreement who work more than two (2) days each workweek, including such employees of other Employers in or connected with the industry for whom contributions are paid, with health benefits under such provisions, rules and regulations as may be determined by the Trustees of the Fund, as provided in the Agreement and Declaration of Trust; provided, however, that the Employer may, by making the required payments into the Fund, cover such other of his employees as he may elect, and provided such coverage is in compliance with law and the Trust Agreement.

Employees who are on workers' compensation or who are receiving disability benefits or disability pension shall be covered by the

23

Health Fund until they may be covered by Medicare or thirty (30) months from the date of disability, whichever is earlier.

In no event shall any employee who was previously covered for such health benefits lose such coverage as a result of the change in this provision, and the Employer shall be obligated to make payments for such employees.

2. Effective January 1, 2005, the Employer shall contribute to the Health Fund $8,710.64 per year for each employee, payable when and how the Trustees determine, to cover employees and their dependent families with health benefits as agreed by the collective bargaining parties, and under such provisions, rules and regulations as may be determined by the Trustees.

For the period October 1, 2004, to December 31, 2004 (the "stub period"), there shall be a one time lump sum payment of $494.00 that shall be paid by the Employer for each covered employee at any time between October 1, 2004 and March 31, 2005 (the accrual date). Only one Employer shall be required to make the contribution for any covered employee for the stub period, which, unless the contribution is made earlier, shall be the Employer of the employee as of the accrual date.

3. Effective January 1, 2006, the Health Fund contribution shall be $9,750.64 per year for each employee.

24

4. Effective January 1, 2007, the Health Fund contribution shall be $10,790.64 per year for each employee.

5. Any Employer who has a plan in effect prior to the effective date of this Agreement which provides health benefits the equivalent of, or better than, the benefits provided for herein, and the cost of which to the Employer is at least as great, may cover his employees under his existing plan or under this Fund. If the Trustees decide the existing plan does not provide equivalent benefits, but does provide health benefits superior to one or more types of health benefits under this Fund, the Employer may participate in the Fund wholly, or partially for hospitalization and/or surgical coverage, and make his payments to the Fund in the amount determined by the Trustees uniformly for all similarly participating Employers.

B. PENSION FUND

1. The Building Service 32BJ Pension Fund shall continue in force and effect in accordance with its provisions, which include the power of its Trustees to revise the amounts of the pension benefits and the conditions under which benefits will be paid, and to continue to cover such employees of other Employers in or connected with the industry for whom contributions are paid, provided such coverage is in compliance with law and the Trust Agreement.

25

Employees unable to work and who are on disability benefits or workers' compensation shall continue to accrue pension benefits during the periods of disability up to six (6) months or the period of disability, whichever is sooner.

2. Effective January 1, 2005, the Employer shall contribute the sum of $43.75 per week for every regular employee as defined in the Building Service 32BJ Pension Plan, as it may be amended.

3. Effective January 1, 2006, the Pension contribution shall be $49.75 per week for every regular employee as defined in the Building Service Pension Plan, as it may be amended.

4. Effective January 1, 2007, the Pension contribution shall be $58.75 per week for every regular employee as defined in the Building Service Pension Plan, as it may be amended.

5. If the Employer has in effect a pension and retirement plan which has been determined by the Trustees to provide benefits equivalent or superior to those provided under the Building Service 32BJ Pension Plan, it may continue such plan provided it continues to provide retirement benefits equivalent or superior to the benefits that are provided under the Building Service 32BJ Pension Plan during the term of this Agreement, and it shall be relieved of any obligation to make payments into the Fund.

6. If the Employer has an existing plan, as referred to above, it shall not discontinue or reduce benefits without prior Trustee approval and shall remain obligated to the employee(s) for whatever benefits they may be entitled.

7. In no event shall the Trustees or any of them, the Union or the RAB, directly or indirectly, by reason of this Agreement, be understood to consent to the extinguishment, change or diminution of any legal rights, vested or otherwise, that anyone may have in the continuation in existing form of any such Employer pension plan, and the Trustees or any of them, the Union and the RAB, shall be held harmless by an Employer against any action brought by anyone covered under such Employer's plan asserting a claim based upon anything done pursuant to Section 6 of this Article. Notice of the pendency of any such action shall be given the Employer who may defend the action on behalf of the indemnitee.

## C. EDUCATIONAL AND TRAINING FUND

The Employer agrees to contribute to the Thomas Shortman Training, Scholarship and Safety Fund. The rate of contribution shall be $145.60 per year for each employee.

The Thomas Shortman Fund may establish a program to insure on-the-job safety and to assist

employees in other adjunct functions relating to their employment, provided that such programs shall meet the requirements of law.

### D. LEGAL SERVICES FUND

The Employer shall contribute $223.60 per employee per year to the Building Service 32BJ Legal Services Fund payable as the Trustees determine.

### E. SUPPLEMENTAL RETIREMENT AND SAVINGS FUND

The Building Service 32BJ Supplemental Retirement and Savings Fund "SRSF" weekly contribution shall be $13.00 per week per employee.

### F. PROVISIONS APPLICABLE TO ALL FUNDS

1. If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including, but not limited to, immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' Trust Agreements, and any and all expenses of collection, including, but not limited to, counsel fees, arbitration costs and fees, court costs, auditors' fees and interest.

Where a contributing Employer is regularly

and consistently delinquent, the Trustees in their discretion may require such security as they deem necessary.

2. Any contributions and benefits required hereunder shall be increased by any amount and in the same manner as contributions and benefits may be increased in the 2005 Commercial Building Agreement (or its successor) between the Union and the RAB, including such increases as may be required by the Health Fund Maintenance of Benefits Provision as set forth in Article XI A 6 of such agreement, and if service fees are required to be paid, the same fees shall be required to be paid hereunder.

3. The Trustees of the Funds shall make such amendments to the Trust Agreement, and shall adopt such regulations, as may be required to conform to applicable law, and which shall in any case provide that employees whose work comes within the jurisdiction of the Union (which shall not be considered to include anyone in an important managerial position) may only be covered for benefits if their Employer has a collective bargaining agreement with the Union. Any dispute about the Union's jurisdiction shall be settled by the Arbitrator if the parties cannot agree.

4. Employees hired on or after April 1, 1996, shall have a waiting period of three (3) months before becoming eligible to be participants in

the Funds, and no contributions shall be made on behalf of the employees over the three-month period.

5. The President of the Union and the President of the RAB may determine, in their discretion, prior to the beginning of the contract years beginning January 1, 2006, and January 1, 2007, to divert any portion of the scheduled increases in the annual rate of Employer Health Fund contributions to the Training Fund and/or the Legal Fund.

## ARTICLE XI
## Classification and Wages

### A. CLASSIFICATIONS

1. Buildings are classified as A, B or C buildings, according to the following definitions:

(a) Class A building – gross area of more than 280,000 square feet.

(b) Class B building – gross area of more than 120,000 and not over 280,000 square feet.

(c) Class C building – gross area of less than 120,000 square feet.

2. Gross area of a LOFT building is the sum total of areas existing on the various floors of a loft building, including the basement space, but excluding that portion of the penthouse used for

30

the machinery and appurtenances of the building and that portion of the basement used for the public utilities and general operation of the property.

Gross area of an entire floor shall be computed by measuring from the inside plaster surfaces of all exterior walls of space encompassed in a tenant's premises, including columns, corridors, toilets, slop sinks, elevator shafts, etc., except that space reserved for the fire tower court.

3. Gross area of an OFFICE building is the sum total of areas existing on the various floors of the building, including the basement space, but excluding that portion of the penthouse used for the machinery and appurtenances of the building and that portion of the basement used for the public utilities and general operation of the property.

Gross area of an entire floor shall be computed by measuring from the inside plaster surfaces of all exterior walls of space used by the tenant on the floor, including columns and corridors, but excluding toilets, porter's closets, slop sinks, elevator shafts, stairs, fire towers, vents, pipe shafts, meter closets, flues and stacks, and any vertical shafts and their enclosing walls. No deductions shall be made for columns, pilasters or projections necessary to the building.

31

## B. WAGES

Effective January 1, 2005, minimum regular wage rates shall be:

### Minimum Wage Rates
### January 1, 2005 - December 31, 2005

#### OFFICE BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $20.398 | $815.92 |
| FOREPERSONS | $20.2855 | $811.42 |
| STARTERS | $20.2855 | $811.42 |
| OTHERS | $18.573 | $742.92 |
| *GUARDS | $17.116 | $684.64 |
| **CLASS B** | | |
| HANDYPERSONS | $20.367 | $814.68 |
| FOREPERSONS | $20.2545 | $810.18 |
| STARTERS | $20.2545 | $810.18 |
| OTHERS | $18.542 | $741.68 |
| *GUARDS | $17.116 | $684.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.323 | $812.92 |
| FOREPERSONS | $20.2105 | $808.42 |
| STARTERS | $20.2105 | $808.42 |
| OTHERS | $18.498 | $739.92 |
| *GUARDS | $17.116 | $684.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

#### LOFT BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $20.348 | $813.92 |
| FOREPERSONS | $20.2545 | $810.18 |
| STARTERS | $20.2545 | $810.18 |
| OTHERS | $18.542 | $741.68 |
| *GUARDS | $17.116 | $684.64 |
| **CLASS B** | | |
| HANDYPERSONS | $20.275 | $811.00 |
| FOREPERSONS | $20.2055 | $808.22 |
| STARTERS | $20.2055 | $808.22 |
| OTHERS | $18.493 | $739.72 |
| *GUARDS | $17.116 | $684.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.152 | $806.08 |
| FOREPERSONS | $20.0645 | $802.58 |
| STARTERS | $20.0645 | $802.58 |
| OTHERS | $18.452 | $738.08 |
| *GUARDS | $17.116 | $684.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

Effective January 1, 2006, each employee covered by this Agreement shall receive a wage increase of $0.25 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons and starters (which shall include all employees doing similar or comparable work by whatever title known) shall be increased by $0.025 respectively for each straight-time hour worked to the extent necessary to bring them up to the contract minimum.

Minimum regular wage rates shall be:

## Minimum Wage Rates
## January 1, 2006 - June 30, 2006

### OFFICE BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $20.673 | $826.92 |
| FOREPERSONS | $20.5605 | $822.42 |
| STARTERS | $20.5605 | $822.42 |
| OTHERS | $18.823 | $752.92 |
| *GUARDS | $17.366 | $694.64 |
| **CLASS B** | | |
| HANDYPERSONS | $20.642 | $825.68 |
| FOREPERSONS | $20.5295 | $821.18 |
| STARTERS | $20.5295 | $821.18 |
| OTHERS | $18.792 | $751.68 |
| *GUARDS | $17.366 | $694.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.598 | $823.92 |
| FOREPERSONS | $20.4855 | $819.42 |
| STARTERS | $20.4855 | $819.42 |
| OTHERS | $18.748 | $749.92 |
| *GUARDS | $17.366 | $694.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## LOFT BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $20.623 | $824.92 |
| FOREPERSONS | $20.5295 | $821.18 |
| STARTERS | $20.5295 | $821.18 |
| OTHERS | $18.792 | $751.68 |
| *GUARDS | $17.366 | $694.64 |
| **CLASS B** | | |
| HANDYPERSONS | $20.550 | $822.00 |
| FOREPERSONS | $20.4805 | $819.22 |
| STARTERS | $20.4805 | $819.22 |
| OTHERS | $18.743 | $749.72 |
| *GUARDS | $17.366 | $694.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.427 | $817.08 |
| FOREPERSONS | $20.3395 | $813.58 |
| STARTERS | $20.3395 | $813.58 |
| OTHERS | $18.702 | $748.08 |
| *GUARDS | $17.366 | $694.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

Effective July 1, 2006, each employee covered by this Agreement shall receive a wage increase of $0.175 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons and starters (which shall include all employees doing similar or comparable work by whatever title known) shall be increased by $0.025 respectively for each regular, straight-time hour

36

worked to the extent necessary to bring them up to the contract minimum.

Minimum regular wage rates shall be:

## Minimum Wage Rates
## July 1, 2006 - December 31, 2006

## OFFICE BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $20.873 | $834.92 |
| FOREPERSONS | $20.7605 | $830.42 |
| STARTERS | $20.7605 | $830.42 |
| OTHERS | $18.998 | $759.92 |
| *GUARDS | $17.541 | $701.64 |
| **CLASS B** | | |
| HANDYPERSONS | $20.842 | $833.68 |
| FOREPERSONS | $20.7295 | $829.18 |
| STARTERS | $20.7295 | $829.18 |
| OTHERS | $18.967 | $758.68 |
| *GUARDS | $17.541 | $701.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.798 | $831.92 |
| FOREPERSONS | $20.6855 | $827.42 |
| STARTERS | $20.6855 | $827.42 |
| OTHERS | $18.923 | $756.92 |
| *GUARDS | $17.541 | $701.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

37

## LOFT BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $20.823 | $832.92 |
| FOREPERSONS | $20.7295 | $829.18 |
| STARTERS | $20.7295 | $829.18 |
| OTHERS | $18.967 | $758.68 |
| *GUARDS | $17.541 | $701.64 |
| **CLASS B** | | |
| HANDYPERSONS | $20.75 | $830.00 |
| FOREPERSONS | $20.6805 | $827.22 |
| STARTERS | $20.6805 | $827.22 |
| OTHERS | $18.918 | $756.72 |
| *GUARDS | $17.541 | $701.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.627 | $825.08 |
| FOREPERSONS | $20.5395 | $821.58 |
| STARTERS | $20.5395 | $821.58 |
| OTHERS | $18.877 | $755.08 |
| *GUARDS | $17.541 | $701.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

Effective January 1, 2007, each employee covered by this Agreement shall receive a wage increase of $0.25 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons, and starters (which shall include all employees doing similar or comparable work by whatever title known), shall be increased by $0.025 respectively for each regular straight-time hour worked to the extent necessary to bring them up to the contract minimum.

## Minimum Wage Rates
## January 1, 2007 - June 30, 2007

### OFFICE BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $21.148 | $845.92 |
| FOREPERSONS | $21.0355 | $841.42 |
| STARTERS | $21.0355 | $841.42 |
| OTHERS | $19.248 | $769.92 |
| *GUARDS | $17.791 | $711.64 |
| **CLASS B** | | |
| HANDYPERSONS | $21.117 | $844.68 |
| FOREPERSONS | $21.0045 | $840.18 |
| STARTERS | $21.0045 | $840.18 |
| OTHERS | $19.217 | $768.68 |
| *GUARDS | $17.791 | $711.64 |
| **CLASS C** | | |
| HANDYPERSONS | $21.073 | $842.92 |
| FOREPERSONS | $20.9605 | $838.42 |
| STARTERS | $20.9605 | $838.42 |
| OTHERS | $19.173 | $766.92 |
| *GUARDS | $17.791 | $711.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## LOFT BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $21.098 | $843.92 |
| FOREPERSONS | $21.0045 | $840.18 |
| STARTERS | $21.0045 | $840.18 |
| OTHERS | $19.217 | $768.68 |
| *GUARDS | $17.791 | $711.64 |
| **CLASS B** | | |
| HANDYPERSONS | $21.025 | $841.00 |
| FOREPERSONS | $20.9555 | $838.22 |
| STARTERS | $20.9555 | $838.22 |
| OTHERS | $19.168 | $766.72 |
| *GUARDS | $17.791 | $711.64 |
| **CLASS C** | | |
| HANDYPERSONS | $20.902 | $836.08 |
| FOREPERSONS | $20.8145 | $832.58 |
| STARTERS | $20.8145 | $832.58 |
| OTHERS | $19.127 | $765.08 |
| *GUARDS | $17.791 | $711.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

Effective July 1, 2007, each employee covered by this Agreement shall receive a wage increase of $0.25 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons, and starters (which shall include all employees doing similar or comparable work by whatever title known), shall be increased by $0.025

respectively for each regular straight-time hour worked to the extent necessary to bring them up to the contract minimum.

## Minimum Wage Rates
## July 1, 2007 - December 31, 2007

### OFFICE BUILDINGS

| | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $21.423 | $856.92 |
| FOREPERSONS | $21.3105 | $852.42 |
| STARTERS | $21.3105 | $852.42 |
| OTHERS | $19.498 | $779.92 |
| *GUARDS | $18.041 | $721.64 |
| **CLASS B** | | |
| HANDYPERSONS | $21.392 | $855.68 |
| FOREPERSONS | $21.2795 | $851.18 |
| STARTERS | $21.2795 | $851.18 |
| OTHERS | $19.467 | $778.68 |
| *GUARDS | $18.041 | $721.64 |
| **CLASS C** | | |
| HANDYPERSONS | $21.348 | $853.92 |
| FOREPERSONS | $21.2355 | $849.42 |
| STARTERS | $21.2355 | $849.42 |
| OTHERS | $19.423 | $776.92 |
| *GUARDS | $18.041 | $721.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## LOFT BUILDINGS

|  | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $21.373 | $854.92 |
| FOREPERSONS | $21.2795 | $851.18 |
| STARTERS | $21.2795 | $851.18 |
| OTHERS | $19.467 | $778.68 |
| *GUARDS | $18.041 | $721.64 |
| **CLASS B** | | |
| HANDYPERSONS | $21.30 | $852.00 |
| FOREPERSONS | $21.2305 | $849.22 |
| STARTERS | $21.2305 | $849.22 |
| OTHERS | $19.418 | $776.72 |
| *GUARDS | $18.041 | $721.64 |
| **CLASS C** | | |
| HANDYPERSONS | $21.177 | $847.08 |
| FOREPERSONS | $21.0895 | $843.58 |
| STARTERS | $21.0895 | $843.58 |
| OTHERS | $19.377 | $775.08 |
| *GUARDS | $18.041 | $721.64 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

The minimum regular hourly wage rates for route jobs shall then be as hereunder set forth:

## ROUTE WORK
### January 1, 2005 - December 31, 2005

|  | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $19.664 | $786.56 |
| FOREPERSONS | $19.5515 | $782.06 |
| STARTERS | $19.5515 | $782.06 |
| OTHERS | $17.639 | $705.56 |
| *GUARDS | $16.4315 | $657.26 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## ROUTE WORK
### January 1, 2006 - June 30, 2006

|  | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| **CLASS A** | | |
| HANDYPERSONS | $19.939 | $797.56 |
| FOREPERSONS | $19.8265 | $793.06 |
| STARTERS | $19.8265 | $793.06 |
| OTHERS | $17.889 | $715.56 |
| *GUARDS | $16.6815 | $667.26 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## ROUTE WORK
### July 1, 2006 - December 31, 2006

| CLASS A | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| HANDYPERSONS | $20.139 | |
| FOREPERSONS | $20.0265 | $805.56 |
| STARTERS | $20.0265 | $801.06 |
| OTHERS | $18.064 | $801.06 |
| *GUARDS | $16.8565 | $722.56 |
| | | $674.26 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## ROUTE WORK
### January 1, 2007 - June 30, 2007

| CLASS A | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| HANDYPERSONS | $20.414 | |
| FOREPERSONS | $20.3015 | $816.56 |
| STARTERS | $20.3015 | $812.06 |
| OTHERS | $18.314 | $812.06 |
| *GUARDS | $17.1065 | $732.56 |
| | | $684.26 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

## ROUTE WORK
### July 1, 2007 - December 31, 2007

| CLASS A | Regular Hourly Rate | 40 Hour Wage |
|---|---|---|
| HANDYPERSONS | $20.689 | |
| FOREPERSONS | $20.5765 | $827.56 |
| STARTERS | $20.5765 | $823.06 |
| OTHERS | $18.564 | $823.06 |
| *GUARDS | $17.3565 | $742.56 |
| | | $694.26 |

*Guards hired before January 25, 1978, shall receive the rate of "Others."

2 a) Effective January 1, 2006, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York-Metropolitan Area (New York-New Jersey) Urban Wage Earners and Clerical Workers] from November 2004 to November 2005 exceeds 6.5%, then, in that event, an increase of $.10 per hour for each full 1% increase in the cost of living in excess of 6.5% shall be granted effective for the first full workweek commencing after January 1, 2006. In no event shall said increase pursuant to this provision exceed $.20 per hour. In computing increases in the cost of living above 6.5%, less than .5% shall be ignored and increases of .5% or more shall be con-

sidered a full point. Any increase here-
under shall be added to the minimum.

b) Effective January 1, 2007, in the event
that the percentage increase in the cost
of living [Consumer Price Index for the
City of New York-Metropolitan Area
(New York-New Jersey) Urban Wage
Earners and Clerical Workers] from
November 2005 to November 2006
exceeds 6%, then, in that event, an
increase of $.10 per hour for each full
1% increase in the cost of living in
excess of 6% shall be granted effective
for the first full workweek commencing
after January 1, 2007. In no event shall
said increase pursuant to this provision
exceed $.20 per hour. In computing
increases in the cost of living above 6%,
less than .5% shall be ignored and
increases of .5% or more shall be con-
sidered a full point. Any increase here-
under shall be added to the minimum.

3. In filling vacancies by replacements, the
replacement employee shall receive the same
wages as the employee replaced unless other-
wise provided in this Agreement (excluding
guards hired on or after January 25, 1978),
excluding extra pay attributable to years of
service or special consideration beyond the
requirements of the job which the replacement
is not qualified to meet.

46

## ARTICLE XII
## Hours and Overtime

1. All employees shall be paid at the rate of
time and one-half for all hours worked in
excess of eight (8) hours per day or forty (40)
hours per week, whichever is greater.

2. Saturday and Sunday are premium days
for all employees (excluding guards hired on or
after January 25, 1978) and work performed on
such days shall be paid for at the rate of time
and one-half the regular, straight-time hourly
rate of pay.

In determining whether an employee's work
shift is to be considered as falling on Saturday
or Sunday, for the purpose of premium pay, it is
understood that the meaning of Saturday or
Sunday work shall be the same as now applies
or, where there is no such practice, shall be
based upon the holiday premium pay practice.

3. The weekly working hours for elevator
operators and starters shall include two twenty
(20) minute relief periods each day, but shall
exclude luncheon recess of not less than forty-
five (45) minutes or more than one (1) hour
each day.

Employees, other than those referred to in the
paragraph above, the majority of whose hours
fall between 7 P.M. and 6 A.M., shall receive a
fifteen (15) minute relief/ lunch period. At the
option of the Employer, the employees who

47

work seven (7) hours or more per day shall, in addition to their regular pay for scheduled hours, receive either additional straight-time pay for one-half (1/2) hour or be relieved one-half (1/2) hour earlier. Employees working six (6) hours per day, shall receive an additional twenty-five (25) minutes straight-time pay or be relieved twenty-five (25) minutes earlier. Employees working five (5) hours per day, shall receive an additional fifteen (15) minutes straight-time pay or be relieved fifteen (15) minutes earlier. This change shall in no way affect the overtime provisions of the contract, nor affect the Employer's right to reschedule hours to provide necessary continuity of coverage.

This Section 3 shall not apply to employees engaged in Route Work for whom relief periods and luncheon recess shall continue as in the past.

4. Except for required relief periods and luncheon recess, hours of work in each day shall be continuous and no employee shall be required to take a relief period or time off in any day in excess of the required relief periods and said luncheon recess, without having said excess relief period or time off charged as working time. There shall be no split shifts.

5. Any employee called in to work by the Employer for any time not consecutive with his regular schedule shall be paid for at least four (4) hours overtime.

6. Every employee shall be entitled to two (2) consecutive days off in any seven (7) days, and any work performed on such days shall be considered overtime and paid for at the rate of time and one-half.

7. No regular employee or his or her replacement shall have his or her regular working hours reduced in order to effect a corresponding reduction in pay.

Any employee classified as "other" who substitutes for an absent "foreperson" for more than four (4) hours shall receive the "foreperson" wage rate for the entire shift.

Employees required to work overtime shall be paid at least one hour at the applicable rate, except for employees working overtime due to absenteeism or lateness.

Any employee who has worked eight hours in a day and is required to work at least four hours of overtime in that day shall be given a $15.00 meal allowance.

8. Any employee who spends one full week or more performing work in a higher-paying category shall receive the higher rate of pay for such service.

9. No overtime shall be given for disciplinary purposes. An Employer shall not require an employee to work an excessive amount of overtime.

10. The Employer agrees to use its best efforts to provide a minimum of sixteen (16) hours off between shifts for its employees.

## ARTICLE XIII
## Management Rights and Obligations; Seniority and Job Security

1 (a) The Union recognizes the right of the Employer to direct and control its policies, subject to the provisions of this Agreement.

(b) The Union and its members will cooperate with the Employer within the provisions of this Agreement to facilitate the efficient operation of jobs.

(c) If an employee is removed from a location at the demand of a customer, the Employer may remove the employee from further employment at that location, provided there is a good faith reason to justify such removal, apart from the demand itself. Unless the Employer has cause to discharge the employee, the Employer will place the employee in a similar job at another facility within the same county covered by this Agreement, without loss of entitlement seniority or reduction in pay or benefits and pay Displacement Pay to such employee equivalent to the Termination Pay Schedule set forth in Article XIX, Sec. 26(a), but not less than two (2) weeks pay.

In the event an employee is transferred to another building and is not filling a vacant position, the Employer shall seek volunteers on the basis of seniority within the job title. If there are no volunteers, the junior employees shall be selected for transfer and receive the same Displacement Pay and protection afforded to the transferred employee.

(d) With respect to all jobs contracted for by the Employer where members of the Union were employed when the contract was acquired, it is agreed that the Employer shall retain at least the same number of employees, the same employees, under the same work schedule and assignments including starting times of each employee, except where this is an appreciable decrease in the work to be done according to the job specifications or the customer's requirements.

(e) The Employer shall not, on any job, decrease the number of employees and/or the hourly work schedule except where there is an appreciable decrease in the work to be done according to the job specifications or the customer's requirements.

(f) In the event the Employer desires to decrease the number of employees and/or hourly work schedule on any job specified in (d) or (e) above, he must, before doing so, request such decrease in writing from the Union

President and obtain the written consent of the Union. The Union's discretion with respect to the granting or denying of such consents shall be absolute and not subject to arbitration.

A reduction in force without the consent of the Union shall be a violation of the Agreement and the Employer shall be required to restore the work force with full back pay and benefits to any employees laid off. To the extent that employees were not laid off, back pay or the remainder theretofore shall be divided amongst the remaining employees in the building.

The arbitrator shall not grant any adjournments of reduction in force cases without mutual consent.

(g) The Employer shall follow and be bound by the rules of seniority of all members of the bargaining unit theretofore employed on all jobs, in respect to job security, promotion, accrued vacations and other benefits.

(h) For any violation by the Employer of the aforementioned provisions, which deal with the necessity of obtaining the written consent of the Union regarding any decrease in the number of employees and/or hourly work schedules and maintenance of conditions on all jobs, the Employer shall pay the full fee of the Contract Arbitrator and all expenses in connection with the arbitration of the dispute.

(i) Any Employer who adds employees to any job in anticipation of being terminated from that job shall be required to place the added employees on its payroll permanently. These employees shall not replace any regular employees already on the payroll of the Employer.

(j) In the event the Employer reduces staff in any job without the consent of the Union and subsequently loses that job to another Employer, the Employer making the reduction shall be responsible for the wages and benefits, of all employees so reduced, from the date of the unauthorized reduction, until the current Employer is legally able to renegotiate its contract with the customer. From that point forward, the current Employer shall restore the staffing to its original level.

(k) In the event that the Employer desires to implement a reduction in work force among its employees working in office buildings for any one of the following reasons:

(1) a change in work specification or work assignment which results in a reduction of work,

(2) elimination of all or part of specified work;

(3) the tenant performing the work itself;

(4) introduction of technological advances;

(5) change in the nature or type of occupancy;

It may do so provided that it can demonstrate to a special committee consisting of the President of the Union, or his designee, and the President of the RAB, or its designee, that such reduction is justified. In making its determination, the Committee shall consider whether the requested reduction is accompanied by a corresponding reduction in work, existing productivity levels in the building and any other factors which the Committee may deem relevant. No reduction may be implemented without the unanimous agreement of the Committee. The decision of the Committee shall be final and binding and not reviewable under the arbitration provisions of this Agreement.

The Committee shall be convened upon the written request of the Employer. The written request must be made to the President of the Union and the President of the RAB, by registered or certified mail (return receipt requested). The Committee must be convened within sixty (60) days of the receipt of such written request. In the event that the Committee is not convened by the sixtieth (60th) day and the Employer is still requesting a reduction in force, it shall serve another written notice on the Presidents of the Union and the RAB by registered or certified mail (return receipt requested) that it intends to

implement the reduction within ten (10) days. If the Committee does not convene within ten (10) days after such notice (except for adjournments requested by the Employer or the RAB) the reduction in force may be implemented as provided herein.

2. As to buildings where the building owner and/or agent is committed to the 2005 Commercial Building Agreement between the RAB and the Union or the building owner and/or agent signed the 2005 Independent Office or Loft Agreement with the Union and agrees to be bound thereby, all the terms of this agreement shall apply, except that the provisions of this Article XIII, paragraph 2, subsections (a) through (d) shall apply, however, these provisions shall not apply to Route Work.

(a) HOURS -Employees on the payroll on or before January 1, 1978, shall not have their scheduled hours reduced. Employees on the payroll on or before January 1, 1978, shall not have their scheduled hours increased by more than one (1) hour a day without the written consent of the Union. Where feasible, the additional hour shall be applied to the first part of the work schedule. The Employer shall give the Union three (3) weeks' written notice of any change of scheduled hours, except in the case of temporary changes. This provision shall not prevent the Employer from working employees

overtime. Employees employed after January 1, 1978, shall work such hours as may be assigned by the Employer provided they are five (5) consecutive days a week, except for guards as defined in this Agreement.

(b) FLEXIBILITY – All new employees may be offered and assigned to any cleaning duty in the building, provided that it does not exceed a reasonable day's work.

Present office cleaning employees may be assigned to any cleaning duty on office floors provided (1) that the Employer give the Union three (3) weeks' written notice of any new assignments, except for temporary assignments, and (2) that the Employer shall not assign employees to workloads or work duties requiring unusual physical exertion, strength or dexterity. This provision shall not be applied by the Employer to substantially increase workloads or substantially alter duties so as to require any employee to perform more than a reasonable day's work.

If the Union grieves and/or arbitrates a dispute pursuant to this provision, the Employer in such arbitration shall have the burden of showing that only a reasonable day's work as provided above is required of the employee.

(c) SICK PAY – An employee absent from duty due to illness only on a scheduled workday

immediately before and/or only on the scheduled workday immediately after a holiday shall not be eligible for sick pay for said absent workday or workdays.

(d) WORK OF ABSENTEES – Where through absenteeism there are insufficient employees to service the building, the Employer may: (a) request service employees in the building to work additional time over and above their work schedule; or (b) employ additional or extra employees to perform the work (Additional time over and above work scheduled shall not be mandatory unless the Employer cannot satisfactorily fill the work requirements from service employees in the building on a voluntary basis. In such event, work over and above the regular work schedule shall be in reverse order of seniority); or (c) request employees in the building to perform work of an absent employee, on a voluntary basis, during their regular working hours.

Employees in the building assigned to perform absentee work as described in subparagraph (c) hereof shall be paid straight-time pay, in addition to their regular daily pay, for each hour of work performed in the absent worker's section. Employees assigned to perform absentee work under subparagraph (c) hereof shall only be required to perform an amount of work appropriate to the number of hours assigned,

e.g., if an employee is assigned to work one hour in an absentee section which is normally cleaned in six (6) hours. The employee shall only be required to do one-sixth (1/6) of the normal work load in that section.

Employees performing absentee work under subparagraph (a), (b), or (c) above shall be given written instructions as to the work to be performed in absentee sections upon the request of the Union.

(e) WORKERS' COMPENSATION – In accordance with Article 10-A of the New York Workers' Compensation Law, §350 et seq., the Employer shall be permitted to contract with a preferred provider organization (PPO) to deliver all medical services mandated by the Workers' Compensation Law. The Employer and employees may exercise all rights granted to them under Article 10-A.

(f) LEAVES OF ABSENCE – Article XIV, General Clauses, Section 14 notwithstanding, employees who meet with accidents or become ill shall not be entitled to a medical leave of absence which exceeds six months, subject to an extension not exceeding an additional six months, in the case of bona fide inability to work whether or not covered by the New York State Workers' Compensation Law or New York State Disability Benefits Law. When such employee is physically and

mentally able to resume work, that employee shall, on one week's prior written notice to the Employer, be then re-employed with no seniority loss.

In cases involving on-the-job injuries, employees who are on medical leave for more than one year may be entitled to return to their job if there is good cause shown.

This provision shall not apply to employees who commenced a medical leave of absence prior to March 1, 2002.

3. Section 2 above, shall not apply to "sole occupant" buildings as defined in Article I, Section 7B.

4. Employees cannot be transferred from one building to another building, or have their regular work assignments or stations changed, without the consent of the Union.

## ARTICLE XIV
### General Clauses

1. DIFFERENTIALS AND NO LOWERING OF STANDARDS

Existing wage differentials among classes of workers within a building shall be maintained. It is recognized that wage differentials other than those herein required may now or hereafter arise or exist because of pay rates above the minimum required by this Agreement.